# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | Case No. 10-13912 (B) |
| THE COMMODORE, L.L.C. d/b/a Parc St. Charles Hotel, | Chapter 11 |
| Debtor. | Hon. Jerry A. Brown, Chief Judge |

## EMERGENCY MOTION AND INCORPORATED MEMORANDUM TO EXCUSE KEEPER'S COMPLIANCE WITH BANKRUPTCY CODE SECS. 543(a), (b), and (c)

COMES NOW Woodmen of the World Life Insurance Society and/or Omaha Woodmen Life Insurance Society ("Woodmen"), a secured creditor and party-in-interest herein, and moves the Court for entry of an Order, pursuant to Bankruptcy Code § 543(d)(1), excusing Highpointe Hospitality, Inc.'s compliance with Bankruptcy Code §§ 543(a), (b), and (c). In support of this Motion, Woodmen states as follows:

### Jurisdiction and Venue

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue of this proceeding and for this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (M).

### Factual Background

2. On May 15, 2003, for good and valuable consideration, The Commodore, L.L.C. ("Debtor") signed and delivered to Woodmen a promissory note in the original principal amount of six million three hundred thousand dollars even ($6,300,00.00) (the "Note"). *See* Aff. of Mark J. McNamara, filed herewith [hereinafter "McNamara Aff."], at ¶ 2.

3. As of October 21, 2010, Debtor owes Woodmen at least the following amounts pursuant to the Note, totaling $6,835,594.21:

   a. Principal: $5,050,313.20

   b. Interest: $435,365.05

   c. Prepayment Consideration: $848,090.63

   d. Late Fees: $7,213.56

   e. Costs and Expenses: $335,011.78

   f. Protective Advances: $159,600.00

McNamara Aff. at ¶ 3.

4. To secure its obligations owed to Woodmen pursuant to the Note, on May 15, 2003 Debtor signed and delivered to Woodmen a Leasehold Mortgage, Security Agreement, Collateral Assignment of Leases and Rents and Fixture Filing (the "Leasehold Mortgage"). Woodmen duly recorded the Leasehold Mortgage with the Orleans Parish Recorder of Mortgages on May 15, 2003 as Instrument No. 708404. McNamara Aff. at ¶ 4.

5. Pursuant to the Leasehold Mortgage, Debtor granted Woodmen a first priority lien and/or security interest in the Property (as that term is defined below). McNamara Aff. at ¶ 5.

6. Debtor was doing business as the Parc St. Charles Hotel (the "Hotel"), and Woodman's liens and/or security interests under the Leasehold Mortgage cover Debtor's leasehold interest in the premises and the movables it used to operate the Hotel. McNamara Aff. at ¶ 6.

7. Debtor is in default in its obligations owed to Woodmen pursuant to the Note and Leasehold Mortgage for, among other things: (i) failing to make payments to Woodmen when due pursuant to the Note and Leasehold Mortgage; (ii) failing to pay real estate taxes; (iii) failing

to pay state taxes; (iv) failing to pay ground rent; and (v) failing to pay insurance premiums. McNamara Aff. at ¶ 7.

8. On June 16, 2010, Woodmen filed its Verified Petition For Executory Process And For Appointment Of Keeper against Debtor in the Civil District Court for the Parish of Orleans, State of Louisiana (the "State Court"), Case No. 10-6143, Division 6-11 (the "Petition"). A true and correct copy of the Petition is attached hereto as Exhibit "A", and is incorporated herein by this reference.

9. Pursuant to the Petition, Woodmen requested that certain of Debtor's property, as more fully described on Exhibit "B" attached hereto and incorporated herein by this reference (the "Property") be seized and sold by the Sheriff.

10. Moreover, pursuant to the Petition, Woodmen requested that Highpointe Hospitality, Inc. ("Keeper") be appointed as the keeper of the Property. Keeper is a property management firm specializing in the hospitality industry.

11. On June 16, 2010, the State Court entered an Order Directing Issuance Of Writ Of Seizure And Sale And Appointing Keeper (the "Order Appointing Keeper"). A true and correct copy of the Order Appointing Keeper is attached hereto as Exhibit "C", and is incorporated herein by this reference.

12. In connection with the State Court proceeding and in accordance with Louisiana law, a number of appraisals of the Property were conducted. The appraised value of the Property varied between $3,300,000 and $5,500,000. While Woodmen does not necessarily agree with such values, in any event, Woodmen does agree that the value of the Property is less than the amount of Debtor's obligations owed to Woodmen pursuant to the Note and Leasehold Mortgage.

1035269v.1

13. Pursuant to the Order Appointing Keeper, Keeper was appointed over the Property to preserve, safeguard, and manage the Hotel while it remained under seizure.

14. Debtor did not appeal the Order Appointing Keeper.

15. After being appointed Keeper on June 16, 2010, with the Sheriff's assistance, Highpoint took possession of the Property on June 23, 2010. Highpointe has remained in possession, custody, and control of the Property since that date.

16. The Sheriff's sale of the Property by advertisement was originally scheduled for September 9, 2010, at 12:00 o'clock noon. The original Sheriff's sale of the Property was postponed, and was rescheduled for October 21, 2010, at 12:00 o'clock noon.

17. On the morning of October 21, 2010, mere hours before the Sheriff's sale of the Property, three creditors, including Debtor's affiliated company, Decatur Hotels, LLC, filed their involuntary petition against Debtor solely to delay and hinder Woodmen's collection efforts against Debtor.

**Legal Argument and Authorities**

18. Section 543(d)(1) provides that a bankruptcy court may excuse compliance with Bankruptcy Code §§ 543(a), (b), and (c) if the interests of the creditors would be better served by permitting a custodian (which term includes the Keeper in this instance) to continue in possession and control of the debtor's property. 11 U.S.C. 543(d)(1); *In re Corporate & Leisure Event Prods., Inc.*, 351 B.R. 724 (Bankr. D. Ariz. 2006); *See also, In re Uno Broad, Corp.* 167 B.R. 189 (Bankr. D. Ariz. 1994) (bankruptcy court granted motion to excuse compliance with §§ 543(a), (b), and (c) pursuant to § 543(d)(1)); *In re Poplar Springs Apartments of Atlanta, Ltd.*, 103 B.R. 146 (Bankr. S.D. Ohio 1989) (bankruptcy court granted creditor's request to excuse a state court-appointed receiver from complying with § 543(b) to turn over debtor's real property

that was creditor's collateral and allowed receiver to remain in possession and control of such property)).

19. In determining whether the interests of creditors would be better served by permitting a custodian to remain in possession of the debtor's property, courts analyze several factors, including the following: (i) whether there will be sufficient income to fund a successful reorganization; (ii) whether there has been mismanagement by the debtor; and (iii) whether the debtor will use the property for the benefit of its creditors. *See In re Orchards Village Invs., LLC*, 405 B.R. 341 (Bankr. D. Or. 2009); *In re LCL Income Props., L.P. VI*, 177 B.R. 872 (Bankr. S.D. Ohio 1995); *Poplar Springs*, 103 B.R. at 150; *Powers Aero Marine Servs., Inc. v. Merrill Stevens Dry Dock Co. (In re Powers Aero Marine Servs., Inc.*, 42 B.R. 540 (Bankr. S.D. Tex. 1984). The debtor's interests are not to be considered by the court in making such determination. *Dill v. Dime Sav. Bank (In re Dill)*, 163 B.R. 221 (E.D.N.Y. 1994).

20. In this case, the facts indicate that Keeper should be excused from complying with §§ 543(a), (b), and (c), should be allowed to remain in possession and control of the Property, and should be permitted to continue operating the Property in the ordinary course of business.

21. Prior to Keeper's appointment, Debtor was in default of its obligations to Woodmen pursuant to the Note and Leasehold Mortgage. Debtor had failed to pay real estate taxes in the amount of $313,483.97, and state taxes in the amount of at least $675,932.05. As a result of Debtor's failure to pay the state taxes, a lien was filed against the Property. These facts indicate that Debtor cannot operate the Property for the benefit of its creditors. *See In re Lizeric Realty Corp.*, 188 B.R. 499, 506 (Bankr. S.D.N.Y. 1995) (bankruptcy court held that receiver was not required to turnover debtor's property, stating "it does not appear that the debtor will operate [the property] for the benefit of creditors. Prior to the receiver's appointment, debtor

1035269v.1

defaulted under two mortgages, failed to pay taxes, and permitted liens to be filed against [the property]").

22.     Debtor has no realistic ability to generate sufficient income to fund a successful reorganization. Subsequent to Keeper's appointment, Woodmen has been forced to subsidize the Hotel's operations, and has advanced $159,600 to Keeper as of October 1, 2010 in order to repair the Property and maintain Keeper's ongoing business operations of the Hotel. Woodmen has also been forced to pay Debtor's ground lease obligations to its landlord, totaling $66,666.68, and has been forced to pay $150,346.56 for Debtor's delinquent real property taxes (Woodmen used $163,137.41 of Debtor's funds held in escrow to pay the remaining amount of real property taxes that were delinquent). Moreover, Woodmen has paid insurance premiums in the amount of $74,431.01, and has paid legal fees in the amount of $43,567.53. McNamara Aff. at ¶ 8. While Keeper has enhanced the Hotel's operations and made significant strides to balance the Hotel's operating budget, the fact remains that the Hotel is still not generating positive cash flow, and Woodmen is required to finance Keeper's monthly business operations.

23.     The condition of the Hotel when Keeper took over the Property indicates that Debtor was grossly mismanaging the Property. In particular, Keeper discovered the following:

    a. There were individuals living on the 11th floor of the Hotel, but there were no records of such individuals making payments. These rooms were extremely dirty and were often missing furniture.

    b. There were several obvious holes in the roof which caused water to leak into some hallways and rooms, and which caused stains and caused some ceilings to cave in.

    c. The air conditioning system was not properly working.

1035269v.1

    d. The water heaters were not properly working, and several rooms had only cold or scalding hot water.

    e. Trash was not being removed.

    f. There was not a sufficient amount of linens.

    g. Smoke detectors were not working in thirty-two (32) of the rooms.

A more thorough description of the condition of the Property when Keeper took over is attached to the Affidavit of Eddie Jacobs filed simultaneously herewith.

    24. Debtor's financial condition and pre-petition conduct unequivocally demonstrate that it cannot generate sufficient income to fund a successful reorganization, it grossly mismanaged the Property before Keeper was appointed, and it cannot and will not use the Property for the benefit of its creditors. As a result, it is in Debtor's creditors' best interests to allow Keeper to remain in possession and control of the Property.

    WHEREFORE, Woodmen respectfully requests that the Court grant this Motion, excuse Keeper from compliance with Bankruptcy Code §§ 543(a), (b), and (c), allow Keeper to remain in possession and control of the Property and to continue operating the Property in the ordinary course of business, and grant Woodmen such other and further relief the Court deems just and equitable.

    Dated this 22nd day of October, 2010.

                                                        WOODMEN OF THE WORLD LIFE
                                                        INSURANCE SOCIETY AND/OR
                                                        OMAHA WOODMEN LIFE INSURANCE
                                                        SOCIETY, Creditor

By: /s/ Andrew D. Mendez
John M. Landis, 7958
Andrew D. Mendez, 26686
Justin P. Lemaire, 29948
STONE PIGMAN WALTHER
  WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Telephone: (504) 581-3200

And

T. Randall Wright
Brandon R. Tomjack
BAIRD HOLM LLP
1500 Woodmen Tower
1700 Farnam St
Omaha, Nebraska 68102-2068
Telephone: 402-344-0500
(Pro Hac Vice Admission Pending)

**CERTIFICATE OF SERVICE**

I hereby certify that copies of this Emergency Motion to Excuse Keeper's Compliance with Bankruptcy Code Sections 543(a), (b), (c) were served this the 22nd day of October, 2010 by electronic filing through the Court's CM/ECF notice of electronic filing or (where indicated) through facsimile or first class U.S. mail, postage prepaid and properly addressed:

| | |
|---|---|
| Jan M. Hayden, Esq.<br>Heller, Draper, Hayden,<br>  Patrick & Horn LLC<br>650 Poydras Street, Suite 2500<br>New Orleans, Louisiana  70130 | Office of the U.S. Trustee<br>400 Poydras Street<br>New Orleans, Louisiana  70130 |
| Duplantier Hrapmann Hogan & Maher, LLP (FAX)<br>1615 Poydras St.<br>Suite 2100<br>New Orleans, LA 70112<br>Fax: 525-5888 | The Commodore, L.L.C.  (U.S. MAIL)<br>d/b/a Parc St. Charles Hotel<br>1515 Poydras St.<br>Suite 1820<br>New Orleans, LA 70112 |
| Dean J. Marcades (U.S. MAIL)<br>59 Walton Way<br>Miramar Beach, FL 32550 | The Commodore, L.L.C.  (FAX)<br>through its registered agent:<br>Patricia S. LeBlanc, Esq.<br>LeBlanc & Butler<br>3421 N. Causeway Blvd.<br>Metairie, LA 70002<br>Fax: 828-1079 |

/s/ Andrew D. Mendez