UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:

THE COMMODORE, L.L.C.,                                    CASE NO. 10-13912

    DEBTOR                                             SECTION "B"
******************************************************************************

**MOTION UNDER 11 U.S.C. 363(b) and (f) FOR: (I) PRELIMINARY ORDER (i) APPROVING BIDDING PROCEDURES AND STALKING HORSE BID, (ii) PRESCRIBING NOTICE REQUIREMENTS, AND (iii) SETTING DATE, TIME AND PLACE FOR AUCTION SALE OF DEBTOR'S PROPERTY**

**NOW INTO COURT**, through undersigned counsel, comes The Commodore, L.L.C. ("Commodore" or "Debtor"), debtor and debtor-in-possession herein, who hereby moves the Court for (i) a preliminary order approving certain procedures and a Stalking Horse Bid and setting certain times to govern competitive bidding at an auction sale of all assets of the Debtor's estate (to include an assignment of the ground lease and certain other executory contracts); and (ii) a final order approving the sale pursuant to Sections 363(b) and 363(f) and the assignments pursuant to Section 365 of the Bankruptcy Code, free and clear of liens, claims and encumbrances, and further approving the Debtor's entering into such contemporaneous ancillary transactions that may be necessary to facilitate the sale, all as more fully described below. In support of this motion, Commodore respectfully represents as follows:

### INTRODUCTION AND BACKGROUND

1.

On October 21, 2010 (the "Petition Date"), several of Debtor's creditors filed an involuntary petition for relief under chapter 11 of the Bankruptcy Code against Debtor. On November 15, 2010, this Court entered the Order for Relief and amended said Order on November 22, 2010, and thereby a case commenced under Chapter 11 of the Bankruptcy Code

(the "Chapter 11 Case"). A Keeper (as defined below) has continued to operate the business and manage Debtor's property since the Petition Date. No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has been established.

2.

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M) and (O).

3.

The statutory predicates for the relief requested herein are Sections 105, 363, and 365 of Title 11 of the Bankruptcy Code.

**RELIEF REQUESTED**

4.

Debtor is the tenant under a ground lease ("the Ground Lease") with Noroaltom Development Company, Inc. ("the Lessor") of certain real property located at 500 St. Charles Avenue, New Orleans, La. Debtor has constructed and owns improvements on the Ground Lease and has acquired, owns or leases, and uses large amounts of furniture, fixtures, and equipment located upon the Ground Lease for the purpose of operating a hotel under the tradename Parc St. Charles (the "Hotel").

5.

The primary reason Debtor's creditors filed this case was an imminent Sheriff's sale in connection with a foreclosure by Woodmen of the World Life Insurance Society and/or Omaha Woodmen Life Insurance Society ("WOW") on its mortgage debt ("the First Mortgage Debt")

totaling $6,835,594.21 as of October 21, 2010, secured by a first lien on the Ground Lease, all improvements thereon, and the furniture, fixtures, and equipment owned by the Debtor (collectively, the "Collateral" or "Assets").

6.

The Hotel has been in the possession of and operated by a state court appointed keeper, Highpointe Hospitality, Inc. (the "Keeper"), since prior to the commencement of this involuntary case against the Debtor. This Court entered interim and final Orders permitting the Keeper to remain in possession during the pendency of this case [P-15 & 41]. Since the Hotel was seized by the Orleans Parish Sheriff and the Keeper was appointed, WOW has advanced an additional $167,429.35 ("the Advances") to the Keeper to fund operations and that amount remains due and owing to WOW as part of the First Mortgage Debt.

7.

The Hotel is in need of a large infusion of capital in order to make needed repairs and improvements for it to be competitive in today's difficult market in the New Orleans area. Based on its current revenues and operating expenses and the estimated cost of needed repairs and improvements, the Collateral for the First Mortgage Debt has a value substantially less than the amount due to WOW. Furthermore, that value is likely to diminish over time unless the necessary capital improvements and repairs are made in the very near future.

8.

It is evident that, in view of the size of the First Mortgage Debt due to WOW, there is little if any value in the Collateral for unsecured creditors or equity interests and operation of the Hotel without continued use of the Collateral is impossible; however, WOW and Debtor desire to

keep the Hotel in business if at all possible for the benefit of Debtor and to provide some recovery to the unsecured creditors of Debtor's estate.

9.

However, WOW is unwilling to await a potentially lengthy and expensive Chapter 11 proceeding before realizing the value of the Collateral through a Plan; on information and belief, WOW has or will soon file a Motion for Relief from Stay and/or a Motion to Dismiss to which Debtor will have few, if any defenses.  Furthermore, the Stalking Horse Bidder (as defined below) is unwilling to keep its offer to purchase the Collateral open through a potentially lengthy and expensive Chapter 11 Disclosure Statement and Plan process, especially since the needed repairs and improvements must be made in the next few months in order to avoid a further diminution in the value of the Hotel.

10.

Debtor has negotiated with WOW in an effort to provide some value from the Collateral to the unsecured creditors which would otherwise be lost if the automatic stay is modified and WOW is permitted to foreclose or otherwise realize the value of its Collateral in state court; furthermore, the proposal made to WOW would also help assure the continuity of the Hotel's operations and the continued employment of certain employees through and after a sale of the Collateral.

11.

Although Debtor's counsel recognizes that many bankruptcy courts, including this Court, are generally not disposed to permit sales pursuant to Section 363 of all or substantially all the assets of a Debtor in Chapter 11 cases, Debtor asserts that exigent circumstances exist in this

case that justify such a sale for the benefit of Debtor's estate, just as occurred in the recent automobile manufacturer cases.

12.

Accordingly, in an effort to preserve some value in the Collateral for the unsecured creditors, continued operation of the Hotel, and the resulting continued employment of certain employees, Debtor and WOW have agreed to seek permission from this Court for approval of a Stalking Horse Bid and procedures to govern competitive bidding at an auction sale of all assets of Debtor's estate and an assignment of the Ground Lease pursuant to Sections 363(b), 363(f), and 365 of the Bankruptcy Code, free and clear of liens, claims and encumbrances, with WOW's lien on the Collateral attaching to the proceeds of said sale, and further approving Debtor's entering into certain contemporaneous ancillary transactions to facilitate such sale.

13.

After the proposed sale of Collateral, Debtor's remaining assets will be the "Carve Out" amount (as described below) in cash, its accounts receivable, and any Avoidance Actions that might exist under Sections 544, 545, 547, and 548 of the Bankruptcy Code. The Carve Out will be sufficient to pay all Allowed Administrative Expenses and some portion of the priority claims in the case.

14.

**THE STALKING HORSE BID**

Debtor has received and agreed to accept, subject to the approval of this Court, and Asset Purchase Agreement ("the APA") from J M Hotels, LLC ("the Stalking Horse Bidder") which is intended to serve as a Stalking Horse Bid. A copy of the executed APA is attached hereto as Exhibit "A.".

15.

The Stalking Horse Bidder is a recently formed Louisiana Limited Liability Company; Edwin M. Palmer III is an "Insider" of Debtor by virtue of his ownership of 27% of Debtor and he is also a principal in the Stalking Horse Bidder. Nonetheless, the Stalking Horse Bid has been negotiated between WOW and the Stalking Horse Bidder in good faith and at arm's length and the Stalking Horse Bidder has received no special consideration nor been given any undue competitive advantage by WOW or Debtor.

16.

Subject to the outcome of the auction process described below, WOW has approved the proposed sale of its Collateral to the Stalking Horse Bidder for the total price of $4,250,000.00 in cash to be paid on the Closing Date and has agreed that $25,000.00 of the sale proceeds shall be retained by Debtor (the "Carve Out"). In addition, if the stalking Horse Bidder is the successful bidder at the auction and the proposed sale is consummated to the Stalking Horse Bidder, Decatur Hotels, LLC will waive any right of distribution in this case by virtue of its unsecured claim scheduled in the amount of $670,426.00 thereby increasing the potential distributions to other unsecured creditors in this case.

17.

WOW's approval of the Stalking Horse Bid and the Carve Out is conditioned upon its retention of any and all moneys in the Keeper's possession as of the date of the closing of the proposed sale (whether to the Stalking Horse Bidder or a higher bidder after the Auction) which will be used to pay down the First Mortgage Debt, including the Advances. Furthermore, WOW will receive all proceeds of the proposed sale over and above the Carve Out until the entire amount of its First Mortgage Debt, including the Advances, is paid in full. In return, WOW has

agreed not seek distribution for any unsecured claim in this case other than from the sales proceeds.

18.

### THE PROPOSED BID PROCEDURES

The Debtor hereby requests that the Court enter a preliminary procedural order (the "Procedures Order") setting the date and time of an auction sale for 10:00 A.M. on Friday, June 24, 2011 in Courtroom B-70, and establishing certain requirements to govern the auction sale described in detail in Exhibit "B" to this motion.

By this Motion, Debtor further states its intention to seek an Order of this Court in aid of enforcement of Louisiana Revised Statute 33:1428(A)(13)(e), which provides: "(e) In the event a defendant in seizure files for bankruptcy before a sheriff's sale and a stay order is issued cancelling the sale, the plaintiff in the suit shall be liable for all costs, other than commissions, incurred while the property was under seizure."

Debtor proposes to give notice of this motion to all creditors and other parties in interest, the Office of the U.S. Trustee, the Sheriff of Orleans Parish, Dehon Investments, L.L.C., Park Square Restaurant Group, L.L.C., and any other persons whom Debtor and/or WOW may identify as a potential purchaser. Debtor submits that no further notice is necessary.

### BASIS FOR RELIEF REQUESTED

19.

Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize

the sale or disposition of a debtor's assets, a sale of a debtor's assets should be authorized when there is an articulated business justification for doing so. See Licensing by Paolo v. Sinatra (In re Gucci), 126 F.3d 380, 387 (2d Cir. 1997); see also In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991); In re Telesphere Communications, Inc., 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983).

20.

Whether a transaction has a sufficient articulated business justification depends on the facts of the case. See In re Continental Airlines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986). A bankruptcy court should consider "all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders alike." Continental, 780 F.2d at 1226; Lionel, 722 F.2d at 1071. Relevant factors may include: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition on the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value." See Continental, 780 F.2d at 1226; Lionel, 722 F.2d at 1071; In re Delaware & Hudson R.R.. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Condere Corporation, 228 B.R. 615, 628 (Bankr. S.D. Miss. 1998).

21.

Once a debtor has articulated a valid business justification, "a presumption [arises] that the officers and directors of a corporation, in making a business decision for that corporation, act only after they have been appropriately informed and after they have honestly determined that

the action to be taken is in the best interest of the corporation." In re Performance Nutrition, Inc., 239 B.R. 93, 111 (Bankr. N.D. Tex. 1999). When applying the "business judgment" standard, courts show deference to a debtor's business decisions. See, e.g., Atkins v. Hibernia Corp., 182 F.3d 320, 324 (5th Cir. 1999); GBL Holding Co. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Group, Ltd.), No. Civ. A. 3:04-CV-2411-M, 2005 WL 440379, *2 (N.D. Tex. Feb. 23, 2005) ("great judicial deference is given to [the debtor in possession's] exercise of business judgment").

22.

In this case, the proposed sale is not a sub rosa plan of reorganization because it seeks only to liquidate assets and will not restructure the rights of creditors. See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.), 780 F.2d 1223 (5th Cir. 1986); PBGC v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 700 F.2d 935 (5th Cir.), reh'g denied, 705 F.2d 450 (5th Cir. 1983); see also In re Naron & Wagner, Chartered, 88 B.R. 85 (Bankr. D. Md. 988) (proposed sale is not a sub rosa plan because it seeks only to liquidate assets and will not restructure the rights of creditors).

23.

By their own terms, Section 363(b) and (f) of the Bankruptcy Code permit sales of assets outside of the ordinary course of business free and clear of liens, claims, and encumbrances; the Section applies in cases pending under any chapter of the Bankruptcy Code, including Chapter 11. Although the Fifth Circuit's decision in *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir. 1983) had long been read to prohibit sales of all or substantially all assets of a debtor in a Chapter 11 case as a *sub rosa* plan, *Braniff* has been construed more narrowly in recent years and bankruptcy courts have routinely approved Section 363 sales of all or substantially all assets of

Chapter 11 debtors when exigent circumstances exist and provided that such sales are not disguised attempts to circumvent the disclosure requirements for confirmation of a plan in Chapter 11 cases. See, e.g., *In re Chrysler, L.L.C.,* 405 B.R. 84 (Bankr. S.D.N.Y. 2009); *In re General Motors Corp.*, 407 B.R. 463 (Bankr. Ct. SD NY 2009); cf. *Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.,* 128 S.Ct. 2326, 2331, n.2, 171 L.Ed.2d 203, 76 USLW 4471

24.

In *General Motors*, Judge Gerber listed the following factors to be considered in determining whether to approve a sale under Section 363 of all or substantially all assets in a Chapter 11 case:

(a) the proportionate value of the asset to the estate as a whole;

(b) the amount of elapsed time since the filing;

(c) the likelihood that a plan of reorganization will be proposed and confirmed in the near future;

(d) the effect of the proposed disposition on future plans of reorganization;

(e) the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property;

(f) which of the alternatives of use, sale or lease the proposal envisions;

(g) whether the asset is increasing or decreasing in value;

(h) whether the estate has the liquidity to survive until confirmation of a plan;

(i) whether the sale opportunity will still exist as of the time of plan confirmation;

(j) If not, the likelihood there will still be a satisfactory alternative sale opportunity, or a stand-alone plan alternative that is equally desirable (or better) for creditors; and

(k) whether a material risk exists that by deferring the sale, the patient will die on the operating table.

*In re General Motors* at 491.

25.

Judge Gerber summarized the situation in *General Motors* as follows:

> On the most basic issue, whether a 363 sale is proper, GM contends that this is exactly the kind of case where a section 363 sale is appropriate and indeed essential-and where under the several rulings of the Second Circuit and the Supreme Court in this area, GM's business can be sold, and its value preserved, before the company dies. The Court agrees. GM cannot survive with its continuing losses and associated loss of liquidity, and without the governmental funding that will expire in a matter of days. And there are no options to this sale-especially any premised on the notion that the company could survive the process of negotiations and litigation that characterizes the plan confirmation process.
>
> As nobody can seriously dispute, the only alternative to an immediate sale is liquidation-a disastrous result for GM's creditors, its employees, the suppliers who depend on GM for their own existence, and the communities in which GM operates. In the event of a liquidation, creditors now trying to increase their incremental recoveries would get nothing.
>
> Neither the Code, nor the caselaw-especially the caselaw in the Second Circuit-requires waiting for the plan confirmation process to take its course when the inevitable consequence would be liquidation. Bankruptcy courts have the power to authorize sales of assets at a time when there still is value to preserve-to prevent the death of the patient on the operating table.
>
> Nor can the Court accept various objectors' contention that there here is a *sub rosa* plan. GM's assets simply are being sold, with the consideration to GM to be hereafter distributed to stakeholders, consistent with their statutory priorities, under a subsequent plan. Arrangements that will be made by the Purchaser do not affect the distribution of the *Debtor's* property, and will address wholly different needs and concerns-arrangements that the Purchaser needs to create a new GM **\*475** that will be lean and healthy enough to survive. *In re General Motors* at 491.

26.

Debtor submits that the situation facing Commodore, its creditors, and customers is no less dire than that in *General Motors,* albeit on a far smaller scale and that the evidence will show that approval of this Motion is in the best interest of creditors and the estate and will not violate the Fifth Circuit's reasoning in *Braniff* as the bid process and procedures and the ultimate sale will not constitute a *sub rosa* plan.

**WHEREFORE**, The Commodore L.L.C., respectfully prays that, after notice and a hearing, this Court enter a preliminary order approving Proposed Bid Procedures as set forth in Paragraph 18 above and as attached hereto as Exhibit "B"; and (ii) enter a final order approving the sale and assignments pursuant to Sections 363(b), 363(f), and 365 of the Bankruptcy Code, free and clear of liens, claims and encumbrances with WOW liens on the Collateral attaching to the proceeds of such sale as described herein, and further approving Debtor's entering into such contemporaneous ancillary transactions that may be necessary to facilitate the sale; Debtor further prays for all such other and further relief as this Court deems just and proper.

    Respectfully submitted:
**STEFFES, VINGIELLO & McKENZIE**

13702 Coursey Blvd., Building 3
Baton Rouge, Louisiana 70817
Telephone: (225) 751-1751
Facsimile: (225) 751-1998
Email: *bsteffes@steffeslaw.com*

By: **s/ William E. Steffes**
    WILLIAM E. STEFFES (#12426)
    C. NOEL STEFFES (#30072)

*Counsel for The Commodore L.L.C.*